# 26-847

## In The United States Court of Appeals
## For The Second Circuit

UPSOLVE, INC. AND REV. JOHN UDO OKON,
*Plaintiffs-Appellants,*

v.

LETITIA JAMES, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NEW YORK,
*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**BRIEF OF THE MANHATTAN INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS**

Ilya Shapiro
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 10017
(212) 599-7000
ishapiro@manhattan.institute

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* states that it has no parent corporation and that no publicly held corporation owns any part of it.

Dated: June 2, 2026

*/s/ Ilya Shapiro*
Ilya Shapiro
*Counsel for* Amicus Curiae

## TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ........................ i

TABLE OF AUTHORITIES ........................ iii

STATEMENT OF INTEREST ........................ 1

SUMMARY OF ARGUMENT ........................ 1

ARGUMENT: THIS COURT SHOULD CLARIFY HOW IT APPLIES INTERMEDIATE SCRUTINY AND RECONSIDER *BROKAMP V. JAMES* ........................ 3

CONCLUSION ........................ 9

CERTIFICATE OF COMPLIANCE ........................ 10

CERTIFICATE OF SERVICE ........................ 10

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*360 Degree Virtual Drone Servs., LLC v. Ritter*,
102 F.4th 263 (4th Cir. 2023) .................................................. 6

*Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023) .............................. 3, 7–8

*Capital Associated Indus., Inc. v. Stein*,
922 F.3d 198 (4th Cir. 2019) .................................................. 5

*Chiles v. Salazar*, 146 S. Ct. 1010 (2026) .................................................. 5

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ........... 3, 7

*Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022) ............................ 4, 7

*Del Castillo v. Sec'y, Fla. Dep't of Health*,
26 F.4th 1214 (11th Cir. 2022) .................................................. 5

*McCullen v. Coakley*, 573 U.S. 464 (2014) ............................................ 3, 4

*Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700 (2d Cir. 2022) .................. 6

*Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020) ........................ 5

*Pickup v. Brown*, 740 F.3d 1208 (9th Cir. 2014) ...................................... 5

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) .................................. 3

## STATEMENT OF INTEREST[1]

The Manhattan Institute for Policy Research (MI) is a nonpartisan public policy research foundation whose mission is to develop and disseminate new ideas that foster greater economic choice and individual responsibility. MI has long promoted scholarship supporting the First Amendment and has filed numerous amicus briefs in the Supreme Court, this Court, and other federal courts defending the freedom of speech and opposing intrusive government regulations.

This case interests MI because it involves both burdensome economic regulations and impositions on free speech. Moreover, MI is headquartered in New York and has a particular interest in laws that affect New Yorkers. The prevalence of debt-collection actions in the state is a significant problem that could be alleviated by this lawsuit.

## SUMMARY OF ARGUMENT

Debt-collection actions have become a significant problem in New York. As recounted more extensively in the Plaintiffs-Appellants' brief, a stunning portion of those actions—70 to 90 percent—result in default

[1] Pursuant to FRAP 29, all parties consented to the filing of this brief. No counsel for either party authored this brief in any part, and no person or entity other than *amicus* made any monetary contribution to fund its preparation or submission.

judgments. Br. for Plaintiffs-Appellants at 4. The state of New York realized the scope of the problem and created a simple form to respond to debt collections. *Id.* Yet the state is not willing to take the next logical step: to allow a non-profit organization to train people to give simple advice on how to fill out the form. In plain terms, New York's vigorous enforcement of its unauthorized practice of law (UPL) regulations is harming New Yorkers—and violating the First Amendment.

The strictness of New York's UPL regulations raises interesting questions about how far the state is willing to go. Who wouldn't violate the law as New York is enforcing it? Upsolve's Justice Advocates are trained on the limited scope of their role, they maintain confidentiality, they do not accept compensation, and they inform all clients that they are neither lawyers nor employees of the court. *Id.* at 6. They simply explain what terms like "laches" mean to clients who are underserved by New York's licensed lawyers.

Despite the clear harm being done to New Yorkers, the district court decided this case on a motion to dismiss. The court deferred to the government's assertions that the state's UPL laws are narrowly tailored to an important government interest.

Intermediate scrutiny requires more. But alas, this Court's intermediate-scrutiny jurisprudence has developed into a confusing two-track process: sometimes it demands and reviews evidence, sometimes it doesn't. This issue should be clarified—and the Court should re-evaluate its decision in *Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023).

## ARGUMENT:
## THIS COURT SHOULD CLARIFY HOW IT APPLIES INTERMEDIATE SCRUTINY AND RECONSIDER *BROKAMP V. JAMES*

The Supreme Court has explained that intermediate scrutiny requires the government to demonstrate that a speech restriction is narrowly tailored to serve an important governmental interest and does not burden substantially more speech than is necessary to further that interest. *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 799 (1989); *McCullen v. Coakley*, 573 U.S. 464, 486–90 (2014). In several Second Circuit decisions, however, speech regulations have survived intermediate scrutiny at the pleading stage with little evidentiary development. *See, e.g.*, *Brokamp v. James*, 66 F.4th 374, 397 (2d Cir. 2023); *Citizens United v. Schneiderman*, 882 F.3d 374, 380−85 (2d Cir. 2018). In those cases, this Court resolved First Amendment challenges by accepting generalized governmental interests, without requiring the kind of evidentiary

showing typically associated with intermediate scrutiny.

In other cases, this Court has applied the more traditional, evidence-based form of intermediate scrutiny. For example, in *Cornelio v. Connecticut*, 32 F.4th 160 (2d Cir. 2022), the Court reversed the dismissal of a First Amendment challenge to Connecticut's sex-offender disclosure requirements, explaining that the government bears the burden of showing that a speech restriction satisfies intermediate scrutiny. *Id.* at 173–76. The Court emphasized that intermediate scrutiny requires a meaningful inquiry into whether the challenged regulation materially advances the government's asserted interests and whether less restrictive alternatives could adequately serve those interests. *Id.* at 174–75. That approach mirrors the framework described in *McCullen*, which requires courts to determine whether a speech restriction is narrowly tailored and does not burden substantially more speech than necessary to achieve the government's objectives. 573 U.S. at 486–90.

These cases are hard to reconcile. Sometimes, speech restrictions survive with little evidentiary development, but other times, the Court requires the government to justify its regulation with the kind of factual showing intermediate scrutiny is supposed to demand. If the

classification of a regulation as content-neutral determines whether courts apply a searching evidentiary inquiry or resolve a case at the pleading threshold, the question here becomes outcome-determinative.

Adding to the confusion that courts around the country have applied different forms of intermediate scrutiny depending on how a regulation is initially characterized. *See, e.g.*, *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1221–23 (11th Cir. 2022) (treating regulation of dietary advice as professional conduct that only incidentally burdens speech); *Otto v. City of Boca Raton*, 981 F.3d 854, 863–71 (11th Cir. 2020) (treating restrictions on counseling conversations as content-based speech regulations subject to strict scrutiny); *Capital Associated Indus., Inc. v. Stein*, 922 F.3d 198, 207–08 (4th Cir. 2019) (characterizing restrictions on the corporate practice of law as regulation of professional conduct); *Pickup v. Brown*, 740 F.3d 1208, 1229–31 (9th Cir. 2014) (treating a conversion-therapy restriction as regulation of professional conduct even though the law allowed counseling supportive of a client's sexual attraction while prohibiting counseling that sought to change it—a ruling presumably abrogated by *Chiles v. Salazar*, 146 S.Ct. 1010 (2026)). Similar dynamics appear in other First Amendment cases in this Court,

where threshold characterizations of government conduct have resolved speech claims at an early stage. *See*, *e.g.*, *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700 (2d Cir. 2022), *vacated and remanded*, 602 U.S. 175 (2024).

These tensions have become explicit in some circuits. For example, the Fourth Circuit recently acknowledged that intermediate scrutiny can operate in more than one form depending on the context in which a speech regulation arises. In *360 Virtual Drone Services LLC v. Ritter*, 102 F.4th 262 (4th Cir. 2024), that court explained that its precedents reflect two distinct intermediate-scrutiny frameworks, with some decisions requiring an evidence-based showing that a restriction does not burden substantially more speech than necessary, while others apply a more relaxed "reasonable fit" inquiry for regulations of professional conduct. *Id.* at 276–80. The court then devised a nonexclusive set of factors to determine whether a regulation targets professional conduct or speech, a classification that determines which form of intermediate scrutiny applies. *Id.* at 274–80. That approach reflects an effort to make explicit a doctrinal tension that appears implicitly in First Amendment jurisprudence.

This Court's precedents reflect a similar tension, though it has not described its doctrine in so many terms. In some cases, the Court treats

intermediate scrutiny as a threshold inquiry that can be resolved without evidentiary development, while in others it requires the government to present evidence that a regulation advances a substantial interest and is appropriately tailored. *Compare Brokamp*, 66 F.4th at 397–401 *and Schneiderman*, 882 F.3d at 380–85 *with Cornelio*, 32 F.4th at 173–76. Whether that divergence stems from differences in context or from the classification of the regulation at issue, the result is uncertainty about how the governing standard applies in practice.

This Court should also consider clarifying its decision in *Brokamp*. As discussed by the Plaintiffs-Appellants, *Brokamp* has been undermined by the recent Supreme Court decision in *Chiles*. Br. for Plaintiffs-Appellants at 19–30. In *Brokamp*, a talk therapist licensed in Virginia with both a master's degree and a doctorate challenged New York's restriction on providing talk therapy online to people in New York. *Brokamp*, 66 F.4th at 381–82. The pandemic greatly increased the demand for online therapy, and some of Dr. Brokamp's previously in-state clients had moved to New York. Yet New York's licensing restrictions required her to be licensed in the state or face penalties. *Id.* at 382.

A panel of this Court noted that "generally" intermediate scrutiny

should be applied at the summary judgment stage, such that the government would be required to provide evidence that the restriction on speech is justified. *Id.* at 398. Yet for reasons that are unclear, the panel held that "in some circumstances, the determination can be made on a motion to dismiss." *Id.* at 197. In so doing, the panel said that "New York could reasonably conclude" that its licensing rules were promoting public health. *Id.* at 400. The panel did not look at evidence on whether licensed out-of-state counselors harm New Yorkers; why licensing was apparently unnecessary during the pandemic but was then necessary after the pandemic; whether unlicensed counselors were a problem in New York before 2005 (when the licensing law took effect); whether less restrictive alternatives were available; or whether limiting New Yorkers' access to trained, professional counselors from other states is harmful to residents.

This case thus presents an opportunity for the Court to clarify an important question that affects all residents of the Second Circuit—particularly those experiencing the difficulties of debt-collection actions.

## CONCLUSION

For these reasons, and those stated by the Plaintiffs-Appellants, the judgment below should be reversed.

Respectfully submitted,

Dated: June 2, 2026

*/s/ Ilya Shapiro*
Ilya Shapiro
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 10017
(212) 599-7000
ishapiro@manhattan.institute
*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 1,566 words.

This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

Dated: June 2, 2026

*/s/ Ilya Shapiro*
Ilya Shapiro
*Counsel for* Amicus Curiae

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ACMS system, which will send notification of such filing to all counsel of record.

Dated: June 2, 2026

*/s/ Ilya Shapiro*
Ilya Shapiro
*Counsel for* Amicus Curiae